IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

POTATO VENTURES LLC,

       Plaintiff,

v.

THE PARTNERSHIPS AND
UNINCORPORATED ASSOCIATIONS
IDENTIFIED ON SCHEDULE A,

       Defendants.

Case No. 25-2312-DDC-RES

## MEMORANDUM AND ORDER

This is a case about dupes. "Dupes"—for those unfamiliar with social media slang—are counterfeit products often sold online for a lower price than the originals. Plaintiff Potato Ventures LLC alleges several online merchants infringed its patented saltshaker design. Doc. 2 at 2 (Verified Compl. ¶ 3). And it alleges, those merchants sold infringing products through online platforms hosted by Amazon, Temu, and Walmart. *See id.* at 6 (Verified Compl. ¶¶ 16–17); Doc. 3 (Schedule A).

Plaintiff filed a Motion for Temporary Restraining Order (Doc. 10). They ask the court to enjoin manufacture, importation, distribution, offering for sale, and sale of infringing products. Doc. 10 at 1. They also request that the court temporarily restrain defendants' assets.[1] *Id.* The court has subject matter jurisdiction under 28 U.S.C. §§ 1331 and 1338(a). This Order, *first*, outlines the relevant factual allegations. *Then*, it addresses whether plaintiff sufficiently has alleged personal jurisdiction over defendants. *Last*, the court resolves whether plaintiff is

---

[1] The motion also requests expedited discovery. Doc. 10 at 1. That portion of the motion is referred to Magistrate Judge Rachel E. Schwartz and remains pending.

entitled to a temporary restraining order (TRO) and its requested injunctive relief.

I.    **Background[2]**

Plaintiff designs, sources, and markets household goods to consumers through e-commerce platforms. Doc. 2 at 4 (Verified Compl. ¶ 9). Relevant to this case, plaintiff sells salt and pepper shakers. *Id.* These salt and pepper shakers have a "unique design claimed in the '816 Patent." *Id.* (Verified Compl. ¶ 10). Plaintiff attaches the patent to its Verified Complaint. *See* Doc. 2-4.

Plaintiff has identified—in what plaintiff filed as "Schedule A"—a host of individuals and business entities who operate e-commerce stores. Doc. 2 at 5 (Verified Compl. ¶ 14). Plaintiff alleges these defendants knowingly offer for sale, sell, and import salt and pepper shaker products that infringe the '816 Patent. *Id.* at 7 (Verified Compl. ¶ 22). Defendants target sales to the United States. *Id.* at 6 (Verified Compl. ¶ 16). They offer shipping to the United States, including Kansas, and they accept payment in U.S. dollars and from U.S. bank accounts. *Id.* Defendants allegedly "have sold Infringing Products to residents of Kansas." *Id.*

Plaintiff alleges these entities "go to great lengths to conceal their identities" and "regularly create new online marketplace accounts" to evade detection. *Id.* (Verified Compl. ¶ 17). Plaintiff also alleges the "high degree of similarity" between defendants' products suggests a "high likelihood" of cooperation among defendants. *Id.* at 3 (Verified Compl. ¶ 6). Plaintiff attaches screenshots that compare the allegedly infringing products with the patented design. *See* Doc. 4 (Schedule A-1).

With that background, the court assesses plaintiff's Motion for a Temporary Restraining

---

[2]    The relevant alleged facts described in this section are pulled from plaintiff's Verified Complaint and any attached exhibits.

Order (Doc. 10).

## II.    TRO Legal Standard

The court may issue an ex parte TRO—one without notice to defendants—if: "specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition[.]" Fed. R. Civ. P. 65(b)(1)(A). The rule also requires a plaintiff's attorney to certify "in writing any efforts made to give notice and the reasons why it should not be required." Fed. R. Civ. P. 65(b)(1)(B). Here, counsel filed and signed the motion, which attests that in "the absence of a TRO without notice, Defendants can and likely will register new e-commerce stores under new aliases, and move any assets to offshore bank accounts[.]" Doc. 11 at 4. And, the motion explains, "Plaintiff is currently unaware of both the true identities and locations of the Defendants[.]" *Id.* at 11. Plaintiff seeks expedited discovery to discover more information about defendants' identities. *Id.* at 12–13. The court concludes these statements suffice to explain why it shouldn't require notice before assessing injunctive relief in this case.

Under 35 U.S.C. § 283, the court may issue injunctive relief "in accordance with the principles of equity to prevent the violation of any right secured by patent[.]" The law of the Federal Circuit governs injunctions under § 283. *Hybritech Inc. v. Abbott Labs.*, 849 F.2d 1446, 1451 n.12 (Fed. Cir. 1988) (concluding injunctive relief under § 283 is governed by the law of the Federal Circuit, not regional circuits); *Roto-Mix Enters., Inc. v. Heyco, Inc.*, No. 93-2035-GTV, 1993 WL 257132, at *3 (D. Kan. June 10, 1993) ("In patent cases the Court of Appeals for the Federal Circuit represents controlling authority.").

A party seeking a TRO must show: (1) that it is substantially likely to succeed on the merits; (2) that it will suffer irreparable injury if the court denies the requested relief; (3) that its

threatened injury without the restraining order outweighs the opposing party's injury under the restraining order; and (4) that the requested relief is not adverse to the public interest. *See Winter v. Nat'l Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008); *see also Hybritech*, 849 F.2d at 1451 (outlining same four factors for preliminary injunctive relief under 35 U.S.C. § 283). Preliminary relief—whether as a TRO or a preliminary injunction— is "'a drastic and extraordinary remedy that is not to be routinely granted.'" *Parah, LLC v. Mojack Distribs., LLC*, No. 18-1208-EFM-TJJ, 2018 WL 4006057, at *3 (D. Kan. Aug. 22, 2018) (quoting *Intel Corp. v. ULSI Sys. Tech., Inc.*, 995 F.2d 1566, 1568 (Fed. Cir. 1993)) (preliminary injunction).

The court, next, addresses all four of these prongs, in turn.

III.     **Analysis**

A.     **Likelihood of Success on the Merits**

To establish likelihood of success on the merits, the court must address two issues plaintiff discusses in its TRO motion: *first*, whether the court has personal jurisdiction over defendants; and *second*, whether plaintiff is likely to succeed on the merits of a patent infringement claim. The court concludes plaintiff has established a likelihood of success on both fronts.

1.     **Personal Jurisdiction**[3]

Plaintiff bears the burden to establish personal jurisdiction over a defendant. *Grober*, 686 F.3d at 1346. Where the personal jurisdiction decision is "based on the record without an evidentiary hearing," plaintiff "need only show a prima facie case for personal jurisdiction." *Id.*

---

[3]     Plaintiff cites Tenth Circuit precedent for assessing personal jurisdiction. *See* Doc. 11 at 5–6. But where "the jurisdictional issue is intimately involved with the substance of the patent laws," the Federal Circuit applies its own law, not the law of the regional circuit. *Grober v. Mako Prods., Inc.*, 686 F.3d 1335, 1345 (Fed. Cir. 2012). For personal jurisdiction questions, that test means that Federal Circuit law governs. *See Nuance Commcn's, Inc. v. Abbyy Software House*, 626 F.3d 1222, 1230 (Fed. Cir. 2010).

at 1345 (quotation cleaned up).

To determine whether the court has personal jurisdiction over defendants, it must assess "whether a forum state's long-arm statute permits service of process and whether assertion of personal jurisdiction violates due process." *Id.* (internal quotation marks and citation omitted). The Kansas long-arm statute permits jurisdiction as far as due process allows. *Kluin v. Am. Suzuki Motor Corp.*, 56 P.3d 829, 894 (Kan. 2002). Due Process requires that the defendant have "minimum contacts with [the forum] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (quotation cleaned up). "There are two types of personal jurisdiction—general and specific." *Grober*, 686 F.3d at 1345. Plaintiff here invokes specific jurisdiction only.

When assessing specific jurisdiction, the Federal Circuit uses a three-pronged test to determine whether exercising personal jurisdiction over non-resident defendants comports with due process. *Xilinx, Inc. v. Papst Licensing GmbH & Co. KG*, 848 F.3d 1346, 1353 (Fed. Cir. 2017). Plaintiff must show: (1) the defendant purposely directed its activities at residents of the forum, (2) the claim arises out of or relates to those activities, and (3) the assertion of personal jurisdiction is reasonable and fair. *Grober*, 686 F.3d at 1346. Parts one and two "correspond with the minimum contacts prong of the [*International Shoe*] analysis." *Xilinx, Inc.*, 848 F.3d at 1353 (quotation cleaned up). Part three "corresponds with the fair play and substantial justice prong of the analysis." *Id.* (quotation cleaned up). It's plaintiff's burden to prove "parts one and two of the test," but then "the burden shifts to the defendant to prove that personal jurisdiction is unreasonable." *Grober*, 686 F.3d at 1346.

The first requirement mandates that defendant take "some act by which [defendant] purposefully avails itself of the privilege of conducting activities within the forum State, thus

5

invoking the benefits and protections of its laws." *Xilinx, Inc.*, 848 F.3d at 1353 (quotation cleaned up). Here, plaintiff alleges defendants created e-commerce stores targeting the United States and offered to ship their products to consumers in Kansas. Doc. 2 at 6 (Verified Compl. ¶ 16). Plaintiff attaches documents showing each defendants' product and willingness to ship to Kansas. *See generally* Doc. 5. And plaintiff alleges defendants "have sold Infringing Products to residents of Kansas." Doc. 2 at 6 (Verified Compl. ¶ 16). The court concludes—at this early stage—that plaintiff has made a prima facie showing that defendants "purposely directed" their business activities to Kansas. *Grober*, 686 F.3d at 1346; *see also Regeneron Pharms., Inc. v. Mylan Pharms. Inc.*, 127 F.4th 896, 909 (Fed. Cir. 2025) ("This court and other appellate courts have concluded that purposeful shipment [or plans to do so] through an established distribution channel . . . can establish personal jurisdiction." (brackets in original) (quotation cleaned up)); *Middleton Mixology LLC v. P'Ships and Unincorporated Assocs. Identified on Schedule A*, No. 24 12287, 2025 WL 513267, at *3 (N.D. Ill. Feb. 17, 2025) (concluding allegations that defendant "operated e-commerce store that offered shipping into Illinois, accepted U.S. dollars, and sold the allegedly infringing products to the residents of Illinois" sufficed to establish a prima facie case for purposeful availment); *LG Elecs., Inc. v. P'Ships and Unincorporated Assocs. Identified in Schedule A*, No. 21-cv-2600, 2021 WL 5742389, at *3 (N.D. Ill. Dec. 2, 2021) ("It is enough that the Ecopure Defendants intentionally used Amazon to sell their products and knew—due to Amazon's vast, nationwide reach—that their products could end up in Illinois.").

The second requirement of the due process test requires that plaintiff's injury "arise[] out of or relate[] to the defendant's activities with the forum state[.]" *Grober*, 686 F.3d at 1346. Plaintiff's patent infringement claims assert defendants' alleged improper manufacturing and

sale of infringing products to the United States, including the state of Kansas.  So, the court concludes this second prong is satisfied.  *See Middleton Mixology, LLC*, 2025 WL 513267, at *3 (concluding second prong met when claims were "based on allegations that [defendant] sold an infringing product to Illinois residents").

Ordinarily, defendants bear the burden on part three—"to prove that personal jurisdiction is unreasonable."  *Grober*, 686 F.3d at 1346.  But because plaintiff requested an ex parte TRO, defendants, by definition, aren't before the court.  This part of the test "applies only sparingly."  *Nuance Commc'ns*, 626 F.3d at 1231.  It's "limited to the rare situation in which the plaintiff's interest and the state's interest in adjudicating the dispute in the forum are so attenuated that they are clearly outweighed by the burden of subjecting the defendant to litigation within the forum."  *Id.* (quotation cleaned up).  At this stage, the court can't say that defendants' burden of litigating in this district outweighs the plaintiff's and state's interest in asserting patent rights in this forum.

The court thus concludes plaintiff has carried its burden—at this early stage—to establish personal jurisdiction over defendants.  Next, the court assesses plaintiff's likelihood of success on its patent infringement claim.

## 2.    Patent Infringement

"[W]hoever without authority makes, uses, offers to sell, or sells any patented invention, within the United States or imports into the United States any patented invention during the term of the patent therefor, infringes the patent."  35 U.S.C. § 271(a).  To prove likelihood of success of the merits, plaintiff must show it likely will "prove infringement, and that it will likely withstand challenges, if any, to the validity of the patent."  *Tinnus Enters., LLC v. Telebrands Corp.*, 846 F.3d 1190, 1202 (Fed. Cir. 2017) (quotation cleaned up).

Start with proving infringement.  Patent infringement "involves the two-step process of construing the claims and comparing the properly construed claims to the accused product." *Id.* at 1203.  Here, plaintiff's infringement claim asserts that defendants appropriated the entire design of the salt and pepper shakers.  Doc. 11 at 7; Doc. 2 at 2 (Verified Compl. ¶ 2) (alleging defendants "have sold products featuring Plaintiff's patented design").  Design patents—like the one at issue here—are infringed when "in the eye of an ordinary observer, giving such attention as a purchaser usually gives, two designs are substantially the same, if the resemblance is such as to deceive such an observer, inducing him to purchase one supposing it to be the other[.]" *Egyptian Goddess, Inc. v. Swisa, Inc.*, 543 F.3d 665, 670 (Fed. Cir. 2008) (internal quotation marks and citation omitted).  This "ordinary observer" test is the "sole test for determining whether a design patent has been infringed." *Columbia Sportswear N. Am., Inc. v. Seirus Innovative Accessories, Inc.*, 942 F.3d 1119, 1129 (Fed. Cir. 2019).  Plaintiff attaches the '816 Patent to its Complaint.  *See generally* Doc. 2-4.  It also attaches screenshots of the allegedly infringing products.  *See generally* Doc. 4.  Each one is similar in size and shape.  The allegedly infringing products bear lettering and fonts akin to the patented design.  The court concludes an ordinary observer would find the designs substantially the same, such that this hypothetical observer is induced to purchase one of the allegedly infringing products instead of the patented design.

Next, consider the patent's validity.  A patent is invalid if the patented invention was "patented, described in a printed publication, or in public use, on sale, or otherwise available to the public before the effective filing date[.]"  35 U.S.C. § 102(a)(1).  Patents also are invalid if the "claimed invention as a whole would have been obvious before the effective filing date . . . to a person having ordinary skill in the art to which the claimed invention pertains."  35 U.S.C.

§ 103. "A patent is entitled to a presumption of validity at all stages of litigation, including during preliminary injunction proceedings." *Parah, LLC*, 2018 WL 4006057, at *4 (citing *Titan Tire Corp. v. Case New Holland, Inc.*, 566 F.3d 1372, 1377 (Fed. Cir. 2009)). So, when "the purported infringer fails to challenge the patent's validity, the existence of the patent itself, combined with the presumption of validity, satisfies the patentee's burden of showing a likelihood of success as to the patent's validity." *Schmeisser GmbH v. AC-Unity d.o.o.*, No. 21-CV-24-SWS, 2021 WL 7286256, at *7 (D. Wyo. Mar. 19, 2021) (citing *Titan Tire*, 566 F.3d at 1377). Because this TRO is ex parte, defendants aren't here to challenge the patent's validity. But the patent itself, combined with the presumption of validity, satisfy plaintiff's burden at this preliminary stage.

The court concludes plaintiff has shown it's likely to succeed on the merits of its patent infringement claim.

### B.    Irreparable Harm

To merit preliminary relief, plaintiff "must establish that it is likely to suffer irreparable harm" absent preliminary relief and that "there is a causal nexus between the alleged infringement and the alleged harm." *Metalcraft of Mayville, Inc. v. Toro Co.*, 848 F.3d 1358, 1368 (Fed. Cir. 2017). "Where the injury cannot be quantified, no amount of money damages is calculable, and therefore the harm cannot be adequately compensated and is irreparable." *Id.* Plaintiff argues it will suffer damage to goodwill and business reputation, price erosion, and lost business opportunities in the absence of a TRO because defendants will continue to sell the allegedly infringing products. *See* Doc. 11 at 8. Those difficult-to-quantify injuries "are all valid grounds for finding irreparable harm" in patent infringement cases. *See Parah*, 2018 WL 4006057, at *8 (quoting *Celsis In Vitro, Inc. v. CellzDirect, Inc.*, 664 F.3d 922, 930 (Fed. Cir.

2012)); *see also XYZ Corp. v. Individuals, P'Ships, and Unincorporated Assocs. Identified on Schedule "A"*, 668 F. Supp. 3d 1268, 1276 (S.D. Fla. 2023) ("Plaintiff has no adequate remedy at law so long as Defendants continue to operate the Seller IDs because Plaintiff cannot control the quality of products sold utilizing the Plaintiff's patent and copyrights or the manner in which Plaintiff's IP Rights are displayed.").  Plaintiff here has established irreparable harm.

### C.    Balance of Equities

To secure a TRO, plaintiff must show that "the balance of equities tips in its favor." *Metalcraft of Mayville*, 848 F.3d at 1369 (quotation cleaned up).  The court assesses this balance by weighing "the harm to the moving party if the injunction is not granted against the harm to the non-moving party if the injunction is granted."  *Id.*  The balance of equities is a discretionary inquiry.  *Id.*  And "the strength of the showing of likelihood of success on the merits" is a thumb placed on plaintiff's side of the scale.  *Parah*, 2018 WL 4006057, at *10 (citing *H.H. Robertson Co. v. United Steel Deck, Inc.*, 820 F.2d 384, 390 (Fed. Cir. 1987), abrogated in part on other grounds by *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 1019 (Fed. Cir. 1995)).

Here, plaintiff's likelihood of success on the merits—at least at this stage—is strong. And plaintiff faces competition from a sizeable group of defendants whose allegedly "infringing products occupy the exact same market niche as Plaintiff's products[.]"  Doc. 11 at 8.  Plaintiff argues that it made an "initial capital investment" to patent its design, while the "swarm of foreign e-commerce retailer[]" defendants made no such investment.  *Id.* at 8, 9.  The court agrees with plaintiff—the risk of harm to plaintiff's intellectual property, reputation, and prices outweighs the risk to defendants should the TRO prove erroneous.  The court concludes the balance tips in plaintiff's favor.

### D.      Public Interest

When "considering whether the public interest favors the grant of an injunction, the district court should focus on whether a critical public interest would be injured by the grant of injunctive relief." *Metalcraft of Mayville*, 848 F.3d at 1369.  Preliminary relief "discourage[s] competition[.]" *Parah, LLC*, 2018 WL 4006057, at *11 (quoting *Bushnell, Inc. v. Brunton Co.*, 673 F. Supp. 2d 1241, 1265 (D. Kan. 2009)).  But equally true is that "the public has an interest in the enforcement of patents." *Id.*  And "[g]enerally, the public interest prong favors the party that will likely prevail on the patent infringement claim." *Id.* (citing *Abbott Lab'ys v. Andrx Pharms., Inc.*, 452 F.3d 1331, 1348 (Fed. Cir. 2006)).  That's true at least "absent any other relevant concerns[.]" *Abbott Lab'ys*, 452 F.3d at 1348.

Here, the court already has concluded that plaintiff has shown a likelihood of success on the merits.  And enforcing plaintiff's patent aligns with the "fundamental purpose of the patent grant" by encouraging "'investment-based risk'" and affirming the "'right to exclude.'" *Parah, LLC*, 2018 WL 4006057, at *11 (quoting *Patlex Corp. v. Mossinghoff*, 758 F.2d 594, 599 (Fed. Cir. 1985)).

At bottom, plaintiff has alleged sufficiently all four factors supporting a TRO.  Now, the court assesses the propriety of the requested form of injunctive relief sought by plaintiff here.

## IV.    Reasonable Equitable Relief

"The Patent Act provides that injunctions 'may' issue 'in accordance with the principles of equity.'" *Bushnell, Inc.*, 673 F. Supp. 2d at 1248 (quoting 35 U.S.C. § 283).  The court may issue injunctive relief "on such terms as the court deems reasonable." 35 U.S.C. § 283.

Plaintiff asks the court to enjoin defendants from making, using, offering for sale, selling, and importing the products described in Schedule A-1 and any unauthorized products that

11

infringe the '816 Patent. Doc. 11 at 11. The court agrees that such relief is reasonable and will preserve plaintiff's asserted intellectual property interests at this early stage.[4]

Plaintiff's motion also seeks to freeze defendants' assets—all of them—as a prejudgment restraint. Doc. 11 at 11–12. But this level of restraint goes far too far. The court recognizes the other district courts that have concluded such a broad restraint is warranted under similar circumstances. *See, e.g.*, *Lead Creation Inc. v. P'Ships & Unincorporated Assocs. Identified on Schedule A*, No. 23-CV-49-CEH-CPT, 2023 WL 1991971, at *5 (M.D. Fla. Feb. 14, 2023) (restraining defendants' assets on ex parte TRO given "the likelihood that Defendants have violated federal patent law and Defendants' efforts to conceal their true identities" alongside the risk defendants "may hide or transfer any ill-gotten assets beyond the jurisdiction of this Court"); *Dongguan Saienchuangke Tech. Co. v. Individuals, P'Ships & Unincorporated Assocs. Identified on Schedule "A"*, No. 24-60865-CIV-DAMIAN, 2024 WL 3543696, at *4 (S.D. Fla. June 12, 2024) ("Defendants shall be temporarily restrained and enjoined from transferring or disposing of any money or other of Defendants' assets until further ordered by this Court.").

The court frames the asset restraint more narrowly than plaintiff. "A request for equitable relief invokes the district court's inherent equitable powers to order preliminary relief, including an asset freeze, in order to assure the availability of permanent relief." *Levi Strauss &*

---

[4]     Plaintiff submitted a proposed order that sought to enjoin third parties—with actual notice of the TRO—from displaying advertisements used by the defendants and restricting defendants from using their merchant accounts and accessing funds in those accounts on the third-party platforms. While plaintiff's Verified Complaint requests similar relief, plaintiff doesn't address the propriety of this request in its Motion for Temporary Restraining Order (Doc. 10) or Memorandum in Support (Doc. 11). So, the court doesn't provide this form of relief in this Order.

But even if it tried to do so, the court can't enjoin preliminarily anyone who isn't a party, officer, agent, servant, employee, or attorney of a party, or "in active concert or participation" with any of the referenced entities. Fed. R. Civ. P. 65(d)(2). Plaintiff hasn't suggested that the third parties it lists satisfy any of those criteria. So, the court can't require the third parties to locate financial accounts or disable sales pages for the infringing products.

*Co. v. Sunrise Int'l Trading Inc.*, 51 F.3d 982, 987 (11th Cir. 1995); *DP Creations, LLC v. Reborn Baby Mart*, No. 21-cv-00574-JNP, 2021 WL 5926471, at *5 (D. Utah Dec. 15, 2021) (same; in copyright infringement action).  Plaintiff's Verified Complaint seeks both equitable and legal relief.  *See* Doc. 2 at 9–10 (seeking injunction, damages, and as an alternative to damages, accounting of profits).  But it's important for the proponent of such relief show a "nexus between the assets sought to be frozen through an interim order and the ultimate relief requested in the lawsuit".  *U.S. ex rel. Rahman v. Oncology Assocs.*, 198 F.3d 489, 496–97 (4th Cir. 1999); *Pillow Menu, LLC v. Super Effective, LLC*, No. 20-cv-03638-STV, 2021 WL 3726205, at *18 (D. Colo. Aug. 19, 2021) (requiring nexus between assets and equitable relief before court could issue asset freeze on motion for injunction).  So, the court limits the asset freeze merely to those assets derived from sales of the allegedly infringing products.  *See LKRB Indus., LLC v. xuzhouaiyaxundianzishangwuyouxiangongsi*, No. 24-CV-1601, 2025 WL 531845, at *16 n.2 (W.D. Pa. Feb. 18, 2025) (concluding amount of funds frozen in TRO was "disproportionate" to the proceeds from allegedly infringing products and holding "that all funds allegedly arising from the sale of the allegedly infringing products shall be frozen—but no more").

## V.    Bond

The court can't issue a notice-less TRO unless "the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained."  Fed. R. Civ. P. 65(c).  Plaintiff requests a bond of no more than $10,000.  Doc. 11 at 14.  The court, in its discretion, sets bond at $15,000—to mitigate the risk on an erroneous restraint on defendants' business activities.

## VI.    Conclusion

In sum, plaintiff has satisfied all four prongs justifying emergency relief.  And it has complied with the requirements of Fed. R. Civ. P. 65(b) justifying an ex parte TRO.  Because defendants' identities and contact information are unknown and there's a risk that defendants would further conceal their identities and assets with notice, the court concludes an ex parte TRO is warranted here.

**IT IS THEREFORE ORDERED BY THE COURT THAT** plaintiff's Motion for Temporary Restraining Order (Doc. 10) is granted in part and denied in part.  The portion of the motion requesting expedited discovery is referred to Magistrate Judge Schwartz and remains pending.

**IT IS FURTHER ORDERED THAT** defendants—listed on Schedule A—and their affiliates, officers, agents, servants, employees, attorneys, and all persons acting for, with, by, through, under, or in active concert with them will be temporarily enjoined and restrained from:

a.    making, offering for sale, selling, and/or importing into the United States for subsequent sale or use the Infringing Products;

b.    aiding, abetting, contributing to, or otherwise assisting anyone in making, using, offering for sale, selling, and/or importing into the United States for subsequent sale or use the Infringing Products; and

c.    effecting assignment or transfer, forming new entities or associations, or utilizing any other device for the purpose of circumventing or otherwise avoiding prohibitions set forth in Subparagraphs (a) and (b).

**IT IS FURTHER ORDERED THAT** defendants will be temporarily restrained and enjoined from transferring or disposing of any money or other of defendants' assets derived from

the sale of the allegedly infringing products until further ordered by this court.

**IT IS FURTHER ORDERED THAT** within seven calendar days of entry of this Order, plaintiff shall deposit with the court $15,000, either cash or surety bond, as security, which amount was determined adequate for the payment of such damages as any person may be entitled to recover because of a wrongful restraint.  The court will issue a Temporary Restraining Order once the required bond is filed with the Clerk of the Court.

**IT IS FURTHER ORDERED THAT** the Clerk—upon receiving plaintiff's bond— must enter on the docket a standalone document capturing all the restraints imposed by this Memorandum and Order.  Only then will the restraints contemplated by this Order take effect.

**IT IS FURTHER ORDERED THAT** any defendants or third parties that are subject to the Temporary Restraining Order may appear and move to dissolve or modify the Temporary Restraining Order as permitted by the Federal Rules of Civil Procedure.

**IT IS SO ORDERED.**

**Dated this 16th day of June, 2025, at Kansas City, Kansas.**

**s/ Daniel D. Crabtree**
**Daniel D. Crabtree**
**United States District Judge**