**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**

POTATO VENTURES LLC,

     **Plaintiff,**

v.                                                                                    **Case No. 25-2312-DDC-RES**

THE PARTNERSHIPS AND
UNINCORPORATED ASSOCIATIONS
IDENTIFIED ON SCHEDULE A, et al.,

     **Defendants.**

## MEMORANDUM AND ORDER

Before the court is plaintiff's Motion for Preliminary Injunction (Doc. 32). Plaintiff

Potato Ventures LLC asserted patent infringement claims against a host of e-commerce

defendants, alleging infringement of its design patent for condiment shakers. Doc. 2 at 2

(Verified Compl. ¶ 3). On June 20, 2025, the court issued an ex parte Temporary Restraining

Order (Doc. 21), restraining 13 defendants from making, offering for sale, or selling products

that allegedly infringed plaintiff's design patent. *See* Doc. 21 at 2. It also restrained defendants

from transferring money or assets derived from sale of those products until further order of the

court. *Id.* The court required plaintiff to post a $15,000 bond. *Id.* at 3.

At plaintiff's request, the court extended the TRO for a second 14-day period under Fed.

R. Civ. P. 65(b)(2). Doc. 27 at 1. Plaintiff then moved to convert the TRO into a preliminary

injunction, and to extend the TRO until the court ruled the preliminary injunction motion. Doc.

32 at 1. Scheduling a prompt hearing, the court granted the motion—but just to the extent it

asked the court to extend the TRO until ruling the preliminary injunction motion. Doc. 34 at 2.

The court noted that doing so, it transformed the TRO into an appealable preliminary injunction. *Id.* at 2 n.2.

The court convened a preliminary injunction hearing on July 23, 2025.  One defendant—styled SZSPKL on the docket and in this Order—appeared by counsel.[1]  Doc. 37.  SZSPKL also submitted a written response to plaintiff's preliminary injunction motion, challenging plaintiff's ability to succeed on the merits of its patent infringement claim.  *See* Doc. 40.  Plaintiff requested a time extension to file its supplemental brief.  Doc. 44.  Given the patent validity questions, the important interests restrained by the TRO, and the likely need for defendant SZSPKL to submit another response after plaintiff's, the court concluded the balance of equities had shifted and thus dissolved the TRO on July 29, 2025.  *Id.*

Both parties now have completed all their supplemental briefing.  *See* Doc. 43 (defendant's supplemental brief); Doc. 45 (plaintiff's supplemental brief); Doc. 47 (defendant's response to forgery allegations in plaintiff's supplemental brief).  The court takes up the preliminary injunction motion, below, but begins with a brief description of plaintiff's allegations and defendant SZSPKL's allegedly infringing product.

I.    **Background[2]**

**Plaintiff's Design Patent and Infringement Allegations**

---

[1]    Unless otherwise noted or made plural, the singular word "defendant" refers just to SZSPKL in this Order.

[2]    At the preliminary injunction hearing, plaintiff presented several documents from the '816 Patent's prosecution before the United States Patent and Trademark Office.  But plaintiff didn't move to admit any of these documents.  The court considers them nonetheless because it takes judicial notice of any documents associated with plaintiff's patent prosecution.  *See Data Engine Techs. LLC v. Google LLC*, 906 F.3d 999, 1008 n.2 (Fed. Cir. 2018) (court may consider prosecution histories at pleadings stage as "matters of public record"); *SB IP Holdings, LLC v. Vivint Smart Home, Inc.*, No. 20-cv-886, 2021 WL 1721715, at *1 (E.D. Tex. Apr. 30, 2021) ("Courts routinely take judicial notice of patents, prosecution history, and patent applications.").

Plaintiff designs, sources, and markets household goods to consumers through e-commerce platforms.  Doc. 2 at 4 (Verified Compl. ¶ 9).  Relevant to this case, plaintiff sells salt and pepper shakers.  *Id.*  These salt and pepper shakers have a "unique design claimed in the '816 Patent."  *Id.* (Verified Compl. ¶ 10).  The design looks like this:

 

*See* Doc. 2-4 at 3, 5 ('816 Patent).[3]  Design patents protect "new, original and ornamental design[s] for an article of manufacture[.]"  35 U.S.C. § 171(a).  While functionality matters for utility patents, design patents turn merely on ornamental features.  *See Auto. Body Parts Ass'n. v. Ford Glob. Techs., LLC*, 930 F.3d 1314, 1316 (Fed. Cir. 2019).  At the preliminary injunction

---

[3]    The '816 Patent includes other perspectives of the patented design, which are included throughout this Order as relevant.

hearing, plaintiff emphasized the written indicia—the words "salt" or "pepper"—are included as elements of the patented design.

Plaintiff alleges the e-commerce defendants knowingly offer for sale, sell, and import salt and pepper shaker products that infringe the '816 Patent. Doc. 2 at 7 (Verified Compl. ¶ 22). According to plaintiff, defendants target sales to the United States. *Id.* at 6 (Verified Compl. ¶ 16). They offer shipping to the United States, including to Kansas, and they accept payment in U.S. dollars and from U.S. bank accounts. *Id.* Defendants allegedly "have sold Infringing Products to residents of Kansas." *Id.* Plaintiff attaches screenshots that compare the allegedly infringing products with the patented design. *See* Doc. 4 (Sched. A-1).

### *Defendant SZSPKL's Accused Product*

Of particular importance in this Order are defendant SZSPKL's accused condiment-shaker products, depicted below.



Doc. 4 at 6–7 (Sched. A-1).

With that brief background, the court turns to the merits of plaintiff's Motion for a Preliminary Injunction (Doc. 32).

4

II.     **Preliminary Injunction Legal Standard**

Under 35 U.S.C. § 283, the court may issue injunctive relief "in accordance with the principles of equity to prevent the violation of any right secured by patent[.]"  The law of the Federal Circuit governs injunctions under § 283.  *Hybritech Inc. v. Abbott Lab'ys*, 849 F.2d 1446, 1451 n.12 (Fed. Cir. 1988) (concluding injunctive relief under § 283 is governed by the law of the Federal Circuit, not regional circuits); *Roto-Mix Enters., Inc. v. Heyco, Inc.*, No. 93-2035-GTV, 1993 WL 257132, at *3 (D. Kan. June 10, 1993) ("In patent cases the Court of Appeals for the Federal Circuit represents controlling authority.").

A party seeking a preliminary injunction must show:  (1) that it is substantially likely to succeed on the merits; (2) that it will suffer irreparable injury if the court denies the requested relief; (3) that its threatened injury without the restraining order outweighs the opposing party's injury under the restraining order; and (4) that the requested relief is not adverse to the public interest.  *See Winter v. Nat'l Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008); *see also Hybritech*, 849 F.2d at 1451 (outlining same four factors for preliminary injunctive relief under 35 U.S.C. § 283).  Preliminary relief is "'a drastic and extraordinary remedy that is not to be routinely granted.'"  *Parah, LLC v. Mojack Distribs., LLC*, No. 18-1208-EFM-TJJ, 2018 WL 4006057, at *3 (D. Kan. Aug. 22, 2018) (quoting *Intel Corp. v. ULSI Sys. Tech., Inc.*, 995 F.2d 1566, 1568 (Fed. Cir. 1993)).  And the "grant or denial of a preliminary injunction under 35 U.S.C. § 283 is within the sound discretion of the district court."  *Amazon.com, Inc. v. Barnesandnoble.com, Inc.*, 239 F.3d 1343, 1350 (Fed. Cir. 2001) (quotation cleaned up).

The court, next, addresses a threshold matter:  its jurisdiction over defendants.  Then, the court applies the preliminary injunction standard to the available facts.

### III.    Analysis

### A.    Personal Jurisdiction[4]

Plaintiff bears the burden to establish personal jurisdiction over a defendant.  *See Grober*, 686 F.3d at 1346.  Where the personal jurisdiction decision is "based on the record without an evidentiary hearing," plaintiff "need only show a prima facie case for personal jurisdiction."  *Id.* at 1345 (quotation cleaned up).  Defendant SZSPKL—the only defendant who has engaged in this litigation—didn't challenge personal jurisdiction at the preliminary injunction hearing.  But it reserved any potential dispute for its answer.  Absent an explicit dispute or new evidence affecting the personal jurisdiction analysis, the court incorporates its personal jurisdiction analysis outlined in its Memorandum and Order (Doc. 13) ruling plaintiff's Motion for Temporary Restraining Order (Doc. 10).  *See* Doc. 13 at 4–7.

Without repeating the court's TRO-stage analysis in full, here's the gist:  Plaintiff asserts specific personal jurisdiction.  Doc. 32 at 4–5.  The court must assess three elements for specific personal jurisdiction to attach.  Those elements are:  (1) the defendant purposely directed its activities at residents of the forum, (2) the claim arises out of or relates to those activities, and (3) the assertion of personal jurisdiction is reasonable and fair.  *Grober*, 686 F.3d at 1346.  It's plaintiff's burden to prove "parts one and two of the test," but then "the burden shifts to the defendant to prove that personal jurisdiction is unreasonable."  *Id.*

The court again concludes that plaintiff has made a prima facie showing of personal jurisdiction.  Doc. 13 at 7.  Plaintiff has alleged defendants purposely availed themselves of

---

[4]    Plaintiff cites Tenth Circuit precedent for assessing the personal jurisdiction issue.  *See* Doc. 32 at 4–5.  But where "the jurisdictional issue is intimately involved with the substance of the patent laws," the Federal Circuit applies its own law, not the law of the regional circuit.  *Grober v. Mako Prods., Inc.*, 686 F.3d 1335, 1345 (Fed. Cir. 2012) (quotation cleaned up).  For personal jurisdiction questions, that test means that Federal Circuit law governs.  *See Nuance Commc'ns, Inc. v. Abbyy Software House*, 626 F.3d 1222, 1230 (Fed. Cir. 2010).

activities in Kansas. *Id.* at 5–6. And plaintiff has alleged its injury arises from defendants'

alleged sales of infringing products in Kansas. *Id.* at 6–7. No defendant—including SZSPKL—

has suggested personal jurisdiction here in our court is unreasonable or unfair. The court thus

concludes it has personal jurisdiction over defendants at this early stage.

Next, the court assesses plaintiff's likelihood of success on its patent infringement claim.

**B.    Likelihood of Success on the Merits**

"[W]hoever without authority makes, uses, offers to sell, or sells any patented invention,

within the United States or imports into the United States any patented invention during the term

of the patent therefor, infringes the patent." 35 U.S.C. § 271(a). To prove likelihood of success

of the merits, plaintiff must show it likely will "prove infringement, and that it will likely

withstand challenges, if any, to the validity of the patent." *Tinnus Enters., LLC v. Telebrands*

*Corp.*, 846 F.3d 1190, 1202 (Fed. Cir. 2017) (quotation cleaned up).

But the court shouldn't issue a preliminary injunction when "the accused infringer 'raises

a substantial question concerning either infringement or validity[.]'" *Biomedical Device*

*Consultants & Lab'ys of Colo., LLC v. ViVitro Labs, Inc.*, No. 2023–2393, 2024 WL 1318251, at

*3 (Fed. Cir. Mar. 28, 2024) (quoting *Amazon.com*, 239 F.3d at 1350). Defendant here raises a

substantial question when it "asserts an infringement or invalidity defense that the patentee

cannot prove lacks substantial merit[.]" *Id.* (quotation cleaned up).

SZSPKL challenges both infringement and validity, making several distinct arguments.

The court addresses just SZSPKL's first validity argument, concluding plaintiff has failed to

show SZSPKL's invalidity defense "lacks substantial merit." *Amazon.com*, 239 F.3d at 1351.

### 1. Patent Validity

"A patent is entitled to a presumption of validity at all stages of litigation, including during preliminary injunction proceedings." *Parah, LLC*, 2018 WL 4006057, at *4 (citing *Titan Tire Corp. v. Case New Holland, Inc.*, 566 F.3d 1372, 1377 (Fed. Cir. 2009)). A validity challenge at the preliminary injunction stage can succeed "on evidence that would not suffice to support a judgment of invalidity at trial." *Amazon.com*, 239 F.3d at 1358. At trial, an accused infringer must show invalidity by "clear and convincing" evidence. *Id.* But at the preliminary injunction stage, a "substantial question" about invalidity "requires less proof" than required to show invalidity in later, dispositive proceedings. *Id.* at 1359. At bottom, the "relevant inquiry is . . . whether the patentee has shown it is more likely than not to prevail over an invalidity challenge." *Natera, Inc. v. NoeGenomic Lab'ys, Inc.*, 106 F.4th 1369, 1377 (Fed. Cir. 2024).

One way an accused infringer can show a patent's invalidity is by anticipation under 35 U.S.C. § 102(a)(1). Under that provision, a patent is invalid if the patented invention was "patented, described in a printed publication, or in public use, on sale, or otherwise available to the public before the effective filing date[.]" 35 U.S.C. § 102(a)(1). These "disclosures" are "often referred to as 'prior art.'" *Helsinn Healthcare S.A. v. Teva Pharms. USA, Inc.*, 586 U.S. 123, 127–28 (2019).

SZSPKL's invalidity arguments here rely on a § 102(a)(1) anticipation theory—using its own allegedly infringing product as prior art. The court begins with two legal primers. *First*, the court explains the critical date and "prior art" issues. And, *second*, it outlines the "anticipation" by prior art issue.

a.      **Prior Art and the Critical Date**

At its simplest, "prior art" refers to disclosures of the invention or patented design that pre-date filing the design's patent application.  35 U.S.C. § 102(a)(1).  And those disclosures render the patent invalid, in most cases.  35 U.S.C. § 102(a)(1).  But one exception to that rule is relevant to this case:  if the disclosure is made within one year of the effective filing date and was made by the inventor, the disclosure doesn't qualify as prior art invalidating the patent. § 102(b)(1)(A).  If the exception applies, any other disclosures—by anyone—occurring after the disclosure date aren't prior art either.  § 102(b)(1)(B).

To make sense of this rule, take the facts of this case.  The '816 Patent's effective filing date is February 16, 2022.  Doc. 2-4 at 1 ('816 Patent).  Then, back up one year from that date— to February 16, 2021.  If the patent applicant's earliest disclosure of the subject matter occurred between February 16, 2021, and February 16, 2022, any other disclosures (by anyone) after that disclosure date do not constitute prior art.

The so-called "critical date"—one year before filing of the patented design—is February 16, 2021.  And plaintiff potentially triggered the one-year grace period in §102(b)(1)(A) by placing its condiment shaker product on sale on February 19, 2021.[5]  Pl. Ex. B-1 (Husseini Decl. ¶¶ 8, 11) (patentee describing in response to USPTO's § 102(a)(1) rejection that he placed the

---

[5]      At the preliminary injunction hearing, SZSPKL argued it would need discovery from plaintiff to verify the date this listing was placed on Amazon.  According to SZSPKL, plaintiff's Exhibit B-2 doesn't include the February 19, 2021, date on the Amazon listing.  SZSPKL is correct, Exhibit B-2 doesn't show that date.  But it does include the date November 6, 2020, as the date first available.  *See* Pl. Ex. B-2.  The patent applicant's declaration clarifies that a *blank* Amazon listing was published on November 6, 2020, with images of the condiment shakers in question published in that listing on February 19, 2021.  Pl. Ex. B-1 (Heusseini Decl. ¶¶ 5–8).  Essentially, SZSPKL attacks the truth of the underlying declaration.  But the court doesn't have any other evidence suggesting Mr. Husseini's declaration is inaccurate. Ultimately, the dispute over this date matters little because both parties revolve their arguments around the critical date—February 16, 2021—anyway.

prior art cited by the examiner on Amazon on February 19, 2021—essentially, the purported prior art was disclosed by the patentee itself); Pl. Ex. B-2 (Amazon listing). Any disclosures after that date do not constitute prior art, even if made before the effective filing date.

This background tees up SZSPKL's invalidity arguments—identifying its allegedly infringing product as prior art anticipating the patented design. It argues its supplier offered the product for sale before the critical date. Below, the court explains the legal standard for anticipation.

**b.    Anticipation**

To anticipate, the prior art must match "in all material respects" the claimed design. *Door-Master Corp. v. Yorktowne, Inc.*, 256 F.3d 1308, 1312 (Fed. Cir. 2001) (quotation cleaned up). Because "that which infringes, if later, would anticipate, if earlier, the design patent infringement test also applies to design patent anticipation." *Id.* (quotation cleaned up). The design-patent-infringement test operates from the "eye of an ordinary observer, giving such attention as a purchaser usually gives[.]" *Egyptian Goddess, Inc. v. Swisa, Inc.*, 543 F.3d 665, 670 (Fed. Cir. 2008) (internal quotation marks and citation omitted). A patent is infringed when "two designs are substantially the same, if the resemblance is such as to deceive [the ordinary observer], inducing him to purchase one supposing it to be the other." *Id.* (quotation cleaned up). This test requires the factfinder to "'compare similarities in overall designs, not similarities of ornamental features in isolation[.]'" *In re Samuels*, No. 2022-1121, 2024 WL 960931, at *2 (Fed. Cir. Mar. 6, 2024) (quoting *Lanard Toys Ltd. v. Dolgencorp LLC*, 958 F.3d 1337, 1343 (Fed. Cir. 2020)).

The Federal Circuit has found a patent invalid under an anticipation theory when the allegedly infringing product was on sale before the critical date. *See Vanmoor v. Wal-Mart*

*Stores, Inc.*, 201 F.3d 1363, 1366 (Fed. Cir. 2000).  A defendant shows anticipation where "the entire basis of the patent infringement claim is [plaintiff's] contention that the accused [products] infringe" the patent.  *Vanmoor*, 201 F.3d at 1366; *cf. also Empire Tech. Grp. Ltd. v. Light & Wonder, Inc.*, 705 F. Supp. 3d 1181, 1183–88 (D. Nev. 2023) (holding patent invalid at summary judgment when defendant proved its allegedly infringing product was in public use before the critical date).  "[I]t is axiomatic that that which would literally infringe if later anticipates if earlier."  *Bristol-Myers Squibb Co. v. Ben Venue Lab'ys, Inc.*, 246 F.3d 1368, 1378 (Fed. Cir. 2001); *Int'l Seaway Trading Corp. v. Walgreens Corp.*, 589 F.3d 1233, 1239 (Fed. Cir. 2009) (applying same rule in design patent case).  And a defendant doesn't concede infringement by making such an argument.  *See Gammino v. Spring Commc'ns Co. L.P.*, No. 10-2493, 2011 WL 3240830, at *2 (E.D. Penn. July 29, 2011) (noting that in "rarer cases" the "defendant's burden to prove that the device anticipated the patented invention is met by the patentee's own allegations of infringement").

SZSPKL's first prior art reference—and the one that proves dispositive for deciding this motion—is its own allegedly infringing product.  The court assesses whether SZSPKL has raised a "substantial question" about the '816 Patent's validity based on its sales of the allegedly infringing product.

### c.     Prior Art:  Defendant's Allegedly Infringing Product

SZSPKL suggests that its allegedly infringing products were on sale and available to the public in late 2020—before the critical date.  Doc. 40 at 5.  So, in SZSPKL's view, the allegedly infringing products qualify as prior art anticipating the '816 Patent and rendering it invalid.  Responding to this argument, plaintiff argues defendant can't show that its allegedly infringing product was on sale before the critical date.  Doc. 45 at 14–16.  That's because, in plaintiff's

view, SZSPKL's prior art evidence is insufficient and incredible. *Id.* at 2. To resolve these arguments, the court addresses the available evidence in the four stages it emerged: (1) at the preliminary injunction hearing; (2) on defendant's supplemental brief; (3) after plaintiff's forgery allegation; and (4) other evidence of pre-critical-date sales.

### *Preliminary Injunction Hearing*

Plaintiff argues SZSPKL is "offering products that infringe every material aspect of Plaintiff's patent-protected design." Doc. 32 at 7–8. Responding, SZSPKL submitted evidence suggesting its supplier had sold the accused product before the critical date.

The story goes something like this: Defendant purchased the accused condiment shakers from manufacturer Xuzhou Zeyu Glass Products Co. Ltd (Zeyu) on Chinese eCommerce platform 1688.com. Doc. 40 at 2; Doc. 40-4 at 2 (Jiang Decl. ¶ 8) (explaining Zeyu's sales on 1688.com and that SZSPKL is a customer). Zeyu and another company jointly had the designs for the accused product created on July 31, 2020. *Id.* at 3 (citing Doc. 40-1 at 2 (Ni Decl. ¶ 5)). And Zeyu's collaborator, Xuzhou Xumiao Glass Products Co. Ltd. (Xumiao), began selling the accused products on 1688.com in October 2020. *Id.* (citing Doc. 40-1 at 2 (Ni Decl. ¶ 7)); Doc. 40-3 at 2 (Def. Ex. 2)).

At the hearing, the plaintiff challenged SZSPKL's prior art evidence, questioning whether it showed the allegedly infringing product was on sale in October 2020. After all, the sales evidence depicted a condiment shaker set without writing—not one bearing "salt" and "pepper" labels. *See* Doc. 40-3 at 2 (Def. Ex. 2). But defendant emphasized that those condiment shakers came in various colors including clear, black, white, blue, and pink. *See* Doc. 40-1 at 2 (Ni Decl. ¶ 6). And defense counsel suggested it received evidence during the hearing that the typeface and

dimensions of the "salt" and "pepper" indicia was created by Zeyu in 2020—lending support to its on-sale-in-2020 theory.  This dispute led to another evidentiary chapter.

### *Supplemental Brief*

In its post-hearing brief, SZSPKL provided additional evidence.  This evidence reflects that the accused product *was* on sale in Fall 2020—as early as September 28, 2020.  *See* Doc. 43-2 at 3–6 (Def. Ex. 8) (translated WeChat messages from September 2020 depicting conversation with "Elaine" about sale of condiment shakers identical to the accused product); Doc. 43-3 at 3–4 (Def. Ex. 9) (translated WeChat messages from November 2020 discussing sale of accused product to "Vola"); Doc. 43-1 at 1, 2, 3 (Jiang Decl. ¶¶ 1, 7–8, 10) (affirming screenshots of WeChat messages between owner of Zeyu and buyers "Elaine" and "Vola" and indicating the products sold in those transactions are the same as SZSPKL's accused product).  SZSPKL also submitted Zeyu's design files—showing the font and dimension of the "salt" and "pepper" indicia on the accused product.  Zeyu had created those design files in August 2020.  *See* Doc. 43-5 at 2–3 (Def. Ex. 10) (showing design file created August 18, 2020); Doc. 43-1 at 2 (Jiang Decl. ¶ 9) (Zeyu provided Adobe Illustrator design files for the accused product to SZSPKL).

Compare the accused product to the condiment shakers offered for sale in the WeChat messages:

| SZSPKL's Allegedly Infringing Product<br>Doc. 4 at 6<br>(Pl. Sched. A-1). | Elaine WeChat Product<br>Doc. 43-2 at 10<br>(Def. Ex. 8) (sent Oct. 1, 2020). | Vola WeChat Product<br>Doc. 43-3 at 8<br>(Def. Ex. 9) (sent Nov. 15, 2020). |
|---|---|---|





The products shown in Zeyu's WeChat-message sales match the accused product. And Zeyu's owner avers these are the same product that SZSPKL later purchased. Doc. 43-1 at 1, 2, 3 (Jiang Decl. ¶¶ 1, 7–8, 10) (indicating products sold in WeChats are same as SZSPKL's accused product). On this evidence, the court would conclude SZSPKL had presented the evidence it failed to provide at the preliminary injunction hearing—evidence that the allegedly infringing product was on sale well before the critical date. But the evidentiary story continued.

### *Plaintiff's Forgery Allegations*

Not so fast, plaintiff argues. Plaintiff asserts SZSPKL forged the WeChat offer for sale from Elaine. Doc. 45 at 1–2. Because SZSPKL allegedly forged at least one image in that WeChat offer, plaintiff asks the court to deem all of its prior art evidence incredible. *Id.* at 2. The alleged forgery is marked in red, below.



*See* Doc. 43-2 at 7 (Def. Ex. 8).  Plaintiff argues this image—purportedly sent to Zeyu's owner in

September 2020—is actually an image that belongs to plaintiff.  Doc. 45 at 4.  And it was created

in January 2021—so "Elaine" couldn't have sent this image to Zeyu in Sepember 2020.  *Id.* at 4,

10.

 For its part, plaintiff submits evidence that it requested marketing images from a freelance

businessman Tony Liu (a/k/a "Brillance") on Fiverr.com in December 2020.  Doc. 45 at 4; Doc.

45-1 at 2 (Pl. Ex. 1) (requesting "high quality infographic and product photography in china"

from "Brilliance"); Doc. 45-9 at 2 (Husseini Decl. ¶ 6).  On January 15, 2021, Mr. Liu delivered

final draft photos to plaintiff.  Doc. 45-3 at 10 (Pl. Ex. 3); Doc. 45-9 at 3 (Husseini Decl. ¶ 12).

The following image of plaintiff's product was included in that photo package.



Doc. 45-5 at 21 (Pl. Ex. 5).[6]

Defendant returns serve, pointing out the flaws in plaintiff's supposed evidence of forgery. It suggests that plaintiff's affiant, Mr. Husseini, lacks "personal knowledge of how 'Tony Liu' performed his work." Doc. 47 at 2. Defendant emphasizes that two of the images included in the package Mr. Liu sent to plaintiff were photoshopped—using stock images first available in January 2013 and September 2017. *Id.* at 3; Doc. 47-6 at 2–3 (Aggarwal Supp. Decl. ¶¶ 8–10) (attesting to discovery of background images on Shutterstock); Doc. 47-8 at 2 (Def. Ex. 18) (stock image uploaded Jan. 2013); Doc. 47-9 at 2 (Def. Ex. 19) (stock image uploaded Sept. 2017). And Tony Liu didn't appear as the uploader of either image. Doc. 47-8 at 3 (Def. Ex. 18); Doc. 47-9 at 3 (Def. Ex. 19).

Defendant doesn't hide the ball, though. Neither of those stock images have the same background as the allegedly forged image. Doc. 47 at 4. At the very least, defendant argues, Mr.

---

6       Plaintiff also suggests another image in the "Elaine" screenshot was forged. *See* Doc. 45 at 9–10. The WeChat message refers to an Alibaba listing for the condiment shakers. Doc. 43-2 at 4 (Def. Ex. 8) (Elaine WeChat message saying the "'SALT' print in your Alibaba listing looks bolder"). But plaintiff argues that if the Alibaba listing truly had existed, defendants would've produced it. Doc. 45 at 10. So, plaintiff asks the court to conclude that this portion of the WeChat evidence is forged as well. The court is mindful of this argument, but views it as too speculative to change the court's conclusion.

Liu's use of stock images and Mr. Husseini's lack of knowledge about how Mr. Liu made the disputed image creates uncertainty. *Id.* Based on that uncertainty, defendant urges the court to weigh the other evidence.

### *Other Evidence*

In the Elaine WeChat sale, the buyer sent a different image, depicting condiment shaker bottles with "salt" and "pepper" labels. Doc. 43-2 at 4 (Def. Ex. 8). Defendant submits evidence that Zeyu created this image in August 2020. *See* Doc. 47-2 at 3 (Def. Ex. 13) (image metadata showing creation of matching image on August 25, 2020); Doc. 47-1 at 3 (Jiang 2d. Supp. Decl. ¶ 10) (Zeyu owner attesting to image metadata). And, Mr. Jiang avers, this image was included in a 1688.com (or Alibaba) listing in late summer or early fall 2020. Doc. 47-1 at 3–4 (Jiang 2d. Supp. Decl. ¶¶ 10–11).

What's more, defendant emphasizes the other pre-critical-date WeChat sale—with buyer "Vola." Doc. 47 at 6. There, the buyer purchased a certain number of sets—numbers that match part of the order memorialized in a Zeyu sales contract dated November 17, 2020. *See* Doc. 43-3 at 3–4 (Def. Ex. 9) (Vola WeChat); Doc. 47-4 at 3–4 (Def. Ex. 15) (sales contract). And defendant provides a screenshot of an electronic payment received that same day for the contracted amount. Doc. 47-5 at 3 (Def. Ex. 16).

Next, the court decides what to make of the parties' evidence—and their evidentiary dispute—in evaluating plaintiff's likelihood of surviving a validity challenge.

### 2.    Likelihood of Success on Patent Validity

Return to the legal standard relevant at this stage. Plaintiff must show it is likely to withstand validity challenges. *Tinnus Enters.*, 846 F.3d at 1202. But the court can't grant a preliminary injunction if defendant has raised a "substantial question" about the patent's validity.

*Biomedical Device Consultants*, 2024 WL 1318251, at \*3.  A substantial question is one which the "patentee cannot prove lacks substantial merit."  *Id.* (quotation cleaned up).

Here, there's a fulsome dispute about the evidence's accuracy and authenticity.  The court concludes defendant has raised a substantial question about the '816 Patent's validity.  To be sure, there's evidence on both sides of the validity question.  But the court can't conclude, at this stage, that plaintiff "more likely than not [will] prevail over an invalidity challenge."  *Natera*, 106 F.4th at 1377; *see also Helifix Ltd. v. Blok-Lok, Ltd.*, 208 F.3d 1339, 1351–52 (Fed. Cir. 2000) (vacating summary judgment of patent invalidity, but affirming denial of preliminary injunction on invalidity grounds where the relevant evidence was "very much in equipoise" and "substantial question of patent invalidity" arose).

In sum, the court could deny plaintiff's motion without further analysis because plaintiff has failed to establish a likelihood of success on the merits.  *Helifix*, 208 F.3d at 1352 (concluding where patentee couldn't establish likelihood of success on merits that it wasn't "necessary for the court to consider the remaining preliminary injunction factors"); *Diné Citizens Against Ruining Our Env't v. Jewell*, 839 F.3d 1276, 1281–82 (10th Cir. 2016) (concluding district court didn't abuse discretion by requiring plaintiff to show likelihood of success on merits, even if three other factors tipped strongly in plaintiff's favor).  But out of caution, the court briefly will address the irreparable harm and balance of equities factors.  And it finds that neither factor goes plaintiff's way.

### C.  Irreparable Harm

To merit preliminary relief, plaintiff "must establish that it is likely to suffer irreparable harm" absent preliminary relief and that "there is a causal nexus between the alleged infringement and the alleged harm."  *Metalcraft of Mayville, Inc. v. Toro Co.*, 848 F.3d 1358,

18

1368 (Fed. Cir. 2017).  Plaintiff argues it will face price erosion, lost business opportunities, and reduced standing on Amazon listings.  Doc. 45 at 17–18.  Difficult-to-quantify injuries like price erosion and lost business opportunities are "valid grounds for finding irreparable harm" in patent infringement cases.  *Parah*, 2018 WL 4006057, at *8 (quoting *Celsis In Vitro, Inc. v. CellzDirect, Inc.*, 664 F.3d 922, 930 (Fed. Cir. 2012)).  But lost sales—"standing alone"—aren't sufficient "to prove irreparable harm[.]"  *Automated Merch. Sys., Inc. v. Crane Co.*, 357 F. App'x 297, 300 (Fed. Cir. 2009).

Plaintiff here suggests the "mere presence of Defendant's infringing goods in the market is itself irreparably harmful[.]"  Doc. 45 at 17.  And it presents a single affidavit attesting that its sales and price point dropped after defendant entered the market in December 2021.  Doc. 45-9 at 8–9 (Husseini Decl. ¶¶ 32–37).  Defendant suggests the court shouldn't consider this declaration—it arrives too late.  Doc. 47 at 8 (arguing plaintiff had months to prepare evidence of irreparable harm).  But even if the court considers the declaration, it concludes plaintiff hasn't shown irreparable harm on this record.

Mr. Husseini's declaration concludes that SZSPKL undercut Potato Ventures on price and "rapidly gained traction on Amazon[.]"  Doc. 45-9 at 8 (Husseini Decl. ¶ 34).  Defendant argues plaintiff fails to provide any support for these "vague statements[.]"  Doc. 47 at 9.  Mr. Husseini generally attests that Potato Ventures's Amazon "sales ranking continued to decline in view of [an] increasing number of . . . copycat shakers"—including those brought to market by SZSPKL.  Doc. 45-9 at 8–9 (Husseini Decl. ¶¶ 35–36).  And he avers that Potato Ventures's sales ranking increased when Amazon removed SZSPKL's allegedly infringing products in 2025.  *Id.* at 9 (Husseini Decl. ¶ 37).

The court agrees.  This "conclusory affidavit is not enough to demonstrate irreparable harm[.]"  *Voile Mfg. Corp. v. Dandurand*, 551 F. Supp. 2d 1301, 1307 (D. Utah 2008) (addressing affidavit suggesting competitor's presence in market devalues company and erodes patent holder's market share).  Plaintiff hasn't explained or provided supporting evidence suggesting SZSPKL's sales caused Potato Ventures's sales ranking to decrease.  The court has some evidence of SZSPKL's sales data.  *See* Doc. 43-7 (Def. Ex. 12).  But it doesn't have any evidence of Potato Ventures's sales data or market share—before or after SZSPKL (or any of the other alleged infringing defendants) entered the market.  *See Metalcraft of Mayville*, 848 F.3d at 1368 (requiring causal nexus between infringement and harm).  Perhaps such evidence could support plaintiff's argument that it will face irreparable harm to its market position and price, absent an injunction.  But plaintiff hasn't made that showing.  *See Travel Tags, Inc. v. UV Color, Inc.*, 690 F. Supp. 2d 785, 800 (D. Minn. 2010) (explaining declaration insufficient to show irreparable harm in patent case where declarant assumed without support that defendant's prices "were solely responsible for [plaintiff's] price erosion").

But even if plaintiff had shown a likelihood of irreparable harm, plaintiff's failure to establish a likelihood of success on the merits sinks this preliminary injunction.  The court quickly addresses, also, the balance of equities—they also tip in defendants' favor.

### D.    Balance of Equities

To secure preliminary injunctive relief, plaintiff must show that "the balance of equities tips in its favor."  *Metalcraft of Mayville*, 848 F.3d at 1369 (quotation cleaned up).  The court assesses this balance by weighing "the harm to the moving party if the injunction is not granted against the harm to the non-moving party if the injunction is granted."  *Id.*  This balance of equities assessment is a discretionary inquiry.  *Id.*

"[T]he strength of the showing of likelihood of success on the merits" is a thumb placed on a plaintiff's side of the scale. *Parah*, 2018 WL 4006057, at *10 (citing *H.H. Robertson Co. v. United Steel Deck, Inc.*, 820 F.2d 384, 390 (Fed. Cir. 1987), *abrogated in part on other grounds by Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 1019 (Fed. Cir. 1995)). But the scale remains balanced here. The patent's validity is in doubt, and plaintiff hasn't shown it's likely to succeed on the merits.

Given the validity question, the court is concerned about the weight of the injunction plaintiff seeks. Before the court dissolved the TRO, it had enjoined defendants from making, offering for sale, or selling the allegedly infringing products. Doc. 13 at 14. And it froze defendants' assets derived from the sale of those products. *Id.* at 14–15. Plaintiff seeks the same restraints again at this stage. *See* Doc. 32 at 10–11. The validity question is a close call on this record. And important interests are at stake. The risk to defendants if the patent proves invalid is far greater than the burden on plaintiff if the court denies the preliminary injunction. An injunction could freeze significant assets wrongfully and cost defendants to miss business opportunities for months—if not years. And if the patent is valid, plaintiff will have a remedy when this is all said and done: damages. On this record, that's the best plaintiff can do. The balance of equities doesn't tip in its favor.

## IV. Conclusion

Securing preliminary injunctive relief is a tall order. This motion's briefing teed up important questions about the '816 Patent's validity—those questions don't lack "substantial merit[,]" at least not at this early stage. *Biomedical Device Consultants*, 2024 WL 1318251, at *3 (quotation cleaned up). Plaintiff hasn't carried its burden to show its likely success on the merits. It hasn't supported its irreparable harm argument adequately. And the balance of

equities tips defendants' way.  The court needn't review the remaining preliminary injunction factor.  A preliminary injunction "is an extraordinary remedy[,]" *Winter*, 555 U.S. at 24, and the court declines to make the exception the rule on this record.  At bottom, the court must wait to see how this fierce dispute between dispensers of dispensers shakes out.

But the court recognizes the important interests at stake—for all parties.  So, the parties (or some of them) might elect to request expedited proceedings.  Magistrate Judge Schwartz recently issued an Initial Order Regarding Planning and Scheduling (Doc. 46).  As part of the planning process, the parties should discuss whether to request a compressed and expedited schedule.  The court entrusts to Judge Schwartz's considerable experience whether to grant such a motion and, if so, how to construct such a schedule.

**IT IS THEREFORE ORDERED BY THE COURT THAT** plaintiff's Motion for Preliminary Injunction (Doc. 32) is denied.

**IT IS SO ORDERED.**

**Dated this 7th day of August, 2025, at Kansas City, Kansas.**

**s/ Daniel D. Crabtree**
**Daniel D. Crabtree**
**United States District Judge**
